IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL J. CAVANAGH and MARIA L. CAVANAGH, his wife, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| -vs- | )<br>) Civil Action No. 05-1182<br>) |
| FAYETTE COUNTY, PROBATION OFFICER RAYMOND MILLER, PROBATION OFFICER JAMES WILLIAMS, JR., PROBATION SUPERVISOR LOU LOZAR and THE HONORABLE RALPH WARMAN, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

AMBROSE, Chief District Judge.

# OPINION
# and
# ORDER OF COURT

## SYNOPSIS

In this civil rights action, Plaintiffs claim that the Defendants violated their civil rights, <u>inter alia</u>, by seizing husband-Plaintiff in West Virginia and transporting him to Pennsylvania. Defendant Warman, a state court judge, is alleged to have ordered or directed the illegal acts. Plaintiff seeks damages pursuant to 42 U.S.C. § 1983 and various state law claims.

Presently, Defendant Warman has moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), on grounds of on judicial immunity. For the following reasons, I will grant his Motion.

## OPINION

### I. STANDARD OF REVIEW

In deciding a motion to dismiss, all factual allegations, and all reasonable inferences therefrom, must be accepted as true and viewed in a light most favorable to the plaintiff. Colburn v. Upper Darby Twp., 838 F. 2d 66, 666 (3d Cir. 1988). The court need not, however, accept bare conclusions of law, unsupported conclusions, and unwarranted inferences. See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). I will dismiss a complaint only if it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L. Ed. 2d 80 (1957). In this context, he moving party bears the burden of persuasion. Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).

### II. PLAINTIFFS' COMPLAINT

The following factual allegations are taken from Plaintiffs' Complaint, except where indicated. Husband-Plaintiff was convicted of various criminal charges. Defendant Warman, a judge on the Court of Common Pleas of Fayette County, Pennsylvania, sentenced him in connection with those charges. He was then freed on bond pending appeal. Husband-Plaintiff, who was not immediately notified when his final appeal was denied, traveled to West Virginia two days after the denial. Probation officers then forcibly seized husband-Plaintiff in West Virginia, and transported him to Pennsylvania. The probation officers were allegedly acting under the direction of Defendant Judge Warman, who was motivated by a desire

to damage husband-Plaintiff's campaign for the office of county commissioner. Plaintiffs, in their opposition papers, assert that husband-Plaintiff would have voluntarily surrendered if such a procedure had been arranged. In their Brief, they aver that the appropriate action would have been to notify husband-Plaintiff to report to serve his jail term.

### III. DEFENDANT'S MOTION

Defendant has moved to dismiss based on the doctrine of judicial immunity. Plaintiffs counter that Defendant is stripped of immunity because their claim is based on his verbal administrative orders, and because he acted outside of his geographical territory.[1]

Judges are, generally, absolutely immune from suits for money damages. Mireles v. Waco, 502 U.S. 9, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991). The doctrine of judicial immunity is grounded in "a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability." Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 435, 124 L. Ed. 2d 391, 113 S. Ct. 2167 (1993). Judicial immunity is inapplicable, however, under two sets of circumstances: a judge is not "not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity"; or for actions taken in the "complete absence of all jurisdiction." Mireles, 502 U.S. at 11.

---

[1] Plaintiffs also argue that their Complaint passes muster, for example, because it avers that Defendant Warman's acts "were not judicial acts and were otherwise conducted in the clear absence of jurisdiction hence lifting the shield of judicial immunity." Such conclusory legal assertions, however, are insufficient to defeat Defendant's Motion.

3

A. **Judicial Act**

In Stump v. Sparkman, 435 U.S. 349, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978), the Supreme Court established a two-prong test to determine whether an act is "judicial," and therefore subject to immunity. First, the court must consider whether the act in question is a function that is "normally performed by a judge." Id. at 362. Under this "functionality" inquiry, a court is required to examine the nature and function of the act, rather than the act itself. Mireles, 502 U.S. at 13. Even if a particular act is not a function normally performed by a judge, the court must look to the particular act's relation to a general function normally performed by a judge. Id. Second, in determining whether an act is "judicial," the court must assess the parties' expectations, and whether they dealt with the judge in his or her judicial capacity. Stump, 435 U.S. at 362. "[P]aradigmatic judicial acts" are those that involve "resolving disputes between parties who have invoked the jurisdiction of a court." Forrester v. White, 484 U.S. 219, 227, 98 L. Ed. 2d 555, 108 S. Ct. 538 (1988).

Here, Plaintiff does not dispute that ordering an arrest or seizure is a general function normally performed by a judge. Cf. Mireles, 502 U.S. at 12. This is in stark contrast to an administrative function such as hiring or firing employees, which are actions "unrelated to [the] judicial role that simply happened to be taken by a judge." Barnes v. Winchell, 105 F.3d 1111, 1112 (6th Cir. 1997); see also Forrester, 484 U.S. at 227. The fact that the orders were carried out by probation officers does not render them less judicial. See Mireles, 502 U.S. at 13.

Instead, Defendant's alleged act was a "paradigmatic judicial act." The state

4

invoked the court's jurisdiction when it instituted criminal proceedings against husband-Plaintiff. Dealing with his bond arrangement was an integral part of the sentencing process, and therefore of adjudicating the dispute between him and the state. Plaintiffs acknowledge that husband-Plaintiff had to be notified to report and serve the sentence imposed by Defendant Warner.[2] Plaintiffs' allegations are, essentially, that Defendant Warner did just that, albeit in an egregious and illegal manner.

Moreover, accepting the allegations of Plaintiffs' Complaint, the parties dealt with Defendant Warner solely in his judicial capacity; the allegations do not implicate any conduct unrelated to Defendant's judicial role. Defendant Warman's involvement in this criminal case cannot, without a good measure of insincerity, be termed unexpected. The nature and function of Judge Warner's alleged actions, therefore, as well as the parties' expectations with respect thereto, clearly render the actions "judicial" rather than administrative for purposes of immunity.

Plaintiffs, however, argue that Defendant is stripped of immunity because his acts were politically motivated and were not associated with any written order. They do not, however, point to any law requiring that action be taken pursuant to written order before it is to be considered "judicial" under an immunity analysis. Broadly, there is no distinction between the validity of a verbal or written judicial

---

[2] Plaintiffs characterize the required notice as administrative. The act of issuing a "notice" regarding a matter on a judicial docket, however, is a routine and integral part of adjudicating a dispute. There can be no serious argument that such a notice is extrajudicial, and therefore merely administrative. For example, it would be difficult to deny that the act of issuing a sua sponte verbal order setting discovery deadlines in a pending case is a "judicial act," despite its ministerial and casual tone.

order or direction. To the contrary, generally speaking, a "lack of formality" does not render an act non-judicial. Stump, 435 U.S. at 360-61. In addition, a judicial act "does not become less judicial by virtue of an allegation of malice or corruption of motive."[3] Forrester, 484 U.S. at 219. For these reasons, despite the allegations of political motivation and the lack of written order, Defendant Warman is entitled to immunity on grounds that the alleged wrongdoing constituted a "judicial act."

## B. Absence of Jurisdiction

Even if an act is judicial in nature, however, a judge is not immune for that act if taken in the "complete absence of all jurisdiction." Mireles, 502 U.S. at 12. In contrast, acts that are merely "in excess of jurisdiction" are covered by absolute immunity. See Winchell, 105 F.3d at 1116. In this context, jurisdiction is to be interpreted broadly. Stump, 435 U.S. at 357.

"[A] judge acts in excess of jurisdiction if the act complained of is within his general power of jurisdiction but is not authorized because of certain circumstances," whereas there "is a clear absence of jurisdiction when a court of limited jurisdiction attempts to adjudicate a case outside of its jurisdiction...." Duty v. City of Springdale, 42 F.3d 460, 462 (8th Cir. 1994) (quotations omitted). The commission of grave procedural errors does not convert legitimate judicial action into action taken in the clear absence of jurisdiction. Stump, 435 U.S. at 359. The "erroneous manner in which [the court's] jurisdiction was exercised, however it may

---

[3]Plaintiff refers to Harper v. Merckle, 638 F.2d 848, 859 (5th Cir. 1981), for the proposition that personal motivation can, under some circumstances, strip a judge of absolute immunity. That principle applies, however, when "no party has invoked the judicial machinery for any purpose at all." Id. As discussed in this Opinion, however, judicial machinery had been invoked here.

have affected the validity of the act," likewise does not render immunity inapplicable. Id.

The "absence of jurisdiction" inquiry focuses on jurisdiction over subject matter, rather than over the person or geography: "'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'" Figueora v. Blackburn, 208 F.3d 435, 444 (3d Cir. 2000) (citing Winchell, 105 F.3d at 1122). As a result, "[w]hen...a court with subject matter jurisdiction acts where...personal jurisdiction is lacking, judicial...absolute immunity remain[s] intact." Stern v. Mascio, 262 F.3d 600, 607 (6th Cir. 2001). The operative inquiry is "whether at the time [the judge] took the challenged action he had jurisdiction over the subject matter before him." Stump, 435 U.S. at 356.

In this case, Plaintiffs do not argue that Defendant Warman lacked subject matter jurisdiction over the criminal matter, or associated sentencing, from which husband-Plaintiff's seizure directly arose. The jurisdiction of Pennsylvania's Court of Common Pleas, which is a court of general jurisdiction, includes, for example, the authority to resolve matters arising under the Pennsylvania criminal code. See Commonwealth v. Bethea, 574 Pa. 100, 113-14, 828 A.2d 1066 (Pa. 2003). The underlying case at issue was within Defendant's authority, even if husband-Plaintiff, physically and temporarily, was not. In this context, therefore, directing an act outside of one's territorial jurisdiction - or, in Plaintiffs' phraseology failing to abide by the "normal procedure" - would be no more than a grave procedural error, or an erroneous exercise of jurisdiction. Otherwise put, this case involves an act in excess

of jurisdiction, rather than an act taken in the complete absence of jurisdiction. That the act might have been invalid and improper, or that I might disagree with Defendant's conduct, does not render immunity inapplicable.

As a final matter, I address Plaintiffs' reliance on Maestri v. Jutkofsky, 860 F.2d 50 (2nd Cir. 1988), in which the court denied immunity to a judge acting outside his territorial jurisdiction. That case, however, is distinguishable from the present one.[4] In Maestri, the territorial problem translated into a defect in the defendant Judge's subject matter jurisdiction. Maestri, 860 F.2d at 53. Plaintiff does not enunciate any such defect here. In any event, Defendant Warner's subject matter jurisdiction cannot be, and has not been, challenged. For these reasons, I decline to follow Maestri in the manner urged by Plaintiffs.

### CONCLUSION

In conclusion, I am persuaded that Plaintiffs can prove no set of facts in support of their claim which would overcome Defendant Warner's entitlement to immunity from suit on Plaintiffs' claims against him. Accordingly, Plaintiffs' Complaint against Defendant Warner will be dismissed. An appropriate Order follows.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

---

[4] Maestri also enunciated a subjective aspect of the judicial immunity analysis, which has not been adopted by the United States Court of Appeals for the Third Circuit. In any event, to the extent that aspect of the analysis is deemed to apply here, I need not reach it because Defendant Warman had subject matter jurisdiction over husband-Plaintiff's criminal matter. See Tucker v. Outwater, 118 F.3d 930, 936 (2nd Cir. 1997).

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL J. CAVANAGH and MARIA L. CAVANAGH, his wife, | ) ) ) |
| Plaintiffs, | ) ) |
| -vs- | ) |
| FAYETTE COUNTY, PROBATION OFFICER RAYMOND MILLER, PROBATION OFFICER JAMES WILLIAMS, JR., PROBATION SUPERVISOR LOU LOZAR and THE HONORABLE RALPH WARMAN, | ) ) ) ) ) ) |
| Defendants. | ) |

Civil Action No. 05-1182

AMBROSE, Chief District Judge.

## **ORDER OF COURT**

AND NOW, this **27th** day of February, 2006, after careful consideration of the parties' submissions and for the reasons set forth above, it is ORDERED that Defendant's Motion to Dismiss (Docket No. 5) is GRANTED, and this matter is dismissed as to Defendant Warner.

BY THE COURT:

/S/ Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge

9

10